

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HYO JUNG, et al.,

Plaintiffs,

- against -

CHORUS MUSIC STUDIO, INC., et al.,

Defendants.

**OPINION AND ORDER**

**13-CV-1494 (CM) (RLE)**

**RONALD L. ELLIS, U.S.M.J.:**

## I. INTRODUCTION

Plaintiffs Hyo Jung, Kee Soo Hong, JeongMin Song, HaeYong Lee, Dal Young Cho, Kyungmo Yan, and SangYoon Shin ("Plaintiffs") commenced this action on March 5, 2013, alleging wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and New York Labor Law ("NYLL") and its accompanying regulations. (Compl. ¶¶ 27-54.) Plaintiffs were waiters and busboys at Defendants' karaoke lounge, Chorus Karaoke. This action was referred to the undersigned on October 4, 2013, for a specific discovery dispute, (Docket No. 11), which was resolved at a telephone conference with the Parties on October 21, 2013. On October 29, 2013, the case was referred for Defendants' motion to amend their Answer to include counterclaims under the Computer Fraud and Abuse Act, 28 U.S.C. § 1030(a) et seq. ("CFAA") and under common law theories of conversion, misappropriation of trade secrets, and unjust enrichment. (Docket No. 15.) For the reasons which follow, Defendants' motion is **DENIED.**

## II. BACKGROUND

Plaintiffs were employed by Defendants in various years spanning 2008 to 2012. Defendants allege that all of the Plaintiffs quit their employment on February 10, 2013, (Def. Mem. Of Law. In Supp. Of Mot. To Amend ("Def Mem.") at 4), and Plaintiffs do not dispute that fact. (Pl. Mem. Of Law In Opp. To Mot. To Amend ("Pl. Mem.") at 23.) On April 16, District Judge Colleen McMahon issued a scheduling order which set July 1 as the deadline for amending the pleadings. Plaintiff served discovery requests on April 22 and Defendants served discovery requests on May 18. Plaintiffs produced documents in response to Defendants' discovery requests on June 28, including the "customer list" at issue in Defendants' proposed counterclaims.

On July 9, and August 1, 2013, Plaintiffs took the Rule 30(b)(6) deposition of the corporate Defendants. On July 24, Defendants served a notice of deposition on Plaintiff Jung for August 22, and subsequently cancelled that date, and Jung was deposed on September 24. Plaintiff Hong was deposed on October 1. At his deposition, Hong testified that: "[T]here was an occasion when the shop had to change the computer and at that time, the manager instructed me to back up the information that had been stored in the previous computer in a file. So I forwarded the content to my own e-mail address when the computer was removed and I stored the information that had been installed in my e-mail account and that was it. I never opened them." (Pl. Decl. In Opp. To Mot. To Amend ("Pl. Decl.") Ex. 3 at 23:13-23.) Hong later testified that, although he did not know what was contained in the file, he sent it to Plaintiffs' counsel "so that they can see if the files could be of some use and help the case." (*Id.* at 25:21-25.)

The deposition of Hong began on October 3, 2013, but was interrupted by a dispute over the deposition. On October 21, the Parties appeared before the Court for a telephone conference to address discovery disputes. At the conference, the Court ordered Plaintiffs' counsel to forward by email to Defendants' counsel any electronic files in her possession that were sent to her by Hong. On October 24, Plaintiffs' counsel forwarded three emails from Hong to Defendants' counsel. (Def. Decl. In Supp. Of Mot. To Amend, Ex. D.) Defendants acknowledged receipt of the emails, but disputed the completeness of the submission. (Docket No. 14.)

Defendants allege that, in April 2013, Plaintiffs initiated their own business venture, Club 88 NY. Defendants seek to rely on the deposition of Jung for this assertion. The pages Defendants provided from Jung's deposition indicate that Jung coordinated with a person named "Michael Yoo" to rent a space for parties with certain unnamed individuals, that the space was called "Club 88" on party days, and that Jung was referred to Michael Yoo by a man named "Haeyong," whose American name was "Michael." (Def. Decl. Ex. F.) Defendants assert that Plaintiffs used Defendants' customer list and other proprietary information taken by Hong from Defendants' computer to promote their new venture, citing Exhibit G, which appears to be a printout from the website of Club 88 NY. Plaintiffs dispute both of these allegations. With respect to Club 88 NY, they do not dispute that the named Plaintiffs worked together at some point in time after leaving Defendants' employ, but dispute that all of the named Plaintiffs worked together for Club 88 NY. (Pl. Mem. at 23.) With respect to the customer list, Defendants allege that since Plaintiffs left their employment, their business has suffered a "significant downturn." (Def. Lee Decl. ¶ 9.) Defendants stated at the October 21 Telephone

Conference for the first time that they intended to move to amend their Answer to add counterclaims. Defendants filed the instant motion on November 4, 2013.

## III. DISCUSSION

### A. The Motion to Amend Should Be Denied Under Rule 16(b)

Generally, leave of court to amend pleadings should be freely given when justice so requires. Fed. R. Civ. P. 15(a); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230 (2d Cir. 1995), *aff'd*, 101 F.3d 1393 (2d Cir. 1996). However, a party moving to amend the pleadings made after the deadline to do so in the court's scheduling order must first satisfy the good cause requirement of Federal Rule of Civil Procedure 16(b). Fed. R. Civ. P. 16(b). *See Parker v. Columbia Pictures Industries*, 204 F.3d 326, 339-40 (2d Cir. 2000). "A finding of 'good cause' depends on the diligence of the moving party." *Id.* at 340. Although diligence is "the primary consideration," the court may consider other relevant factors, including whether amendment of the pleadings will prejudice the opposing party. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Grant v. Citibank*, 10-CV-2955 (KNF), 2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010). If a proposed amendment is based on "information that the party knew or should have known prior to the deadline, leave to amend is properly denied." *Soroof Trading Dev. Co., Ltd. V. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012). *See Fuller v. Interview, Inc.*, 07-CV-5728 (RJS) (DF).

Defendants did not act with diligence in pursuing their motion to amend. Defendants filed the motion to amend on November 4, 2013, over four months after the deadline for amendment of pleadings, July 1, 2013. Defendants assert that they were unaware of the facts underlying their counterclaims until Hong's deposition on October 1, 2013. (Def. Lee. Decl. ¶ 4.) However, Plaintiffs assert, and Defendants do not dispute, that on May 18, 2013, Defendants

sent Plaintiffs their document requests, including a request that Plaintiffs "[p]roduce all documents in the form when they were taken, including invoices, receipts, customer information, or other employee's information which are the property of the Employer that each Plaintiff without permission, may have removed from Chorus's place of business at any time during their employment with Chorus." (Pl. Schulman Decl. Ex. 2 at 5.) On June 28, Plaintiffs responded to Defendants' document requests, and, among other documents, produced the customer list now at issue. (Pl. Schulman Decl. ¶ 8.) The production of the list at issue before the deadline for amendments to the pleadings, if not the original request for the list, demonstrates that Defendants knew or should have known the facts underlying their counterclaims prior to the deadline. *Soroof Trading Dev. Co., Ltd.*, 283 F.R.D. at 147.

Defendants assert that Plaintiffs merely produced print-outs or hard copy documents in response to their May 18, 2013 discovery request, and that they were not on notice that documents had been taken from Defendant Chorus's business computer until they received documents in electronic form from Plaintiffs' counsel pursuant to the Court's order. This argument is without merit. Whether or not Defendants knew of the facts supporting the counterclaims is not the standard. The record shows that even if Defendants did not know the facts underlying their proposed claims before July 1, 2013, they should have known.

Defendants also failed to act with diligence by not requesting an extension of the deadline as soon as they received the customer list from Plaintiffs. Even crediting Defendants' claim that they were unaware of the alleged unauthorized taking of electronic information before October 1, 2013, Defendants did not act with diligence when they failed to notify the Court about their intended motion to amend before the October 21, 2013 Telephone Conference. Defendants correctly assert that they notified the Court of Hong's alleged unauthorized taking of the files on

October 4, 2013, but failed to notify the Court of their intent to amend the pleadings. Defendants also delayed in serving their discovery requests for over a month after the scheduling order was issued, (Pl. Schulman Decl. ¶¶ 3, 6), and despite appearing to suspect that some of their former employees could have taken documents from Chorus without permission, failed to serve any requests seeking the identity of the person or persons in possession of such documents. Defendants also delayed the start of depositions by cancelling a deposition scheduled for August 22, 2013. (*Id.* ¶ 12.) Defendants' cumulative actions show a general lack of urgency.

Granting Defendants' motion to amend would also prejudice Plaintiffs. In assessing prejudice, courts consider whether the amendment of the pleadings would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). In this case, amendment of the pleadings would require Plaintiffs to "expend significant additional resources to conduct discovery and prepare for trial" and significantly delay resolution of the case. *Id.* Pursuant to Judge McMahon's April 16, 2013 scheduling order, discovery was ordered closed on November 1, 2013,[1] (Pl. Schulman Decl. Ex. 1), and document discovery and two of seven of depositions have already been completed. (Def. Mem. at 21.) Defendants' proposed counterclaims for conversion, misappropriation of trade secrets, and unjust enrichment, and violations of the CRFAA are factually unrelated to Plaintiffs' wage and hour claims, and would therefore require a new round of discovery. *See Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, 11-CV-1456 (THK), 2011 WL 6034481, at

[1] Judge McMahon has authorized the undersigned to extend discovery if the instant motion is granted. (Docket No. 18.)

*8 (S.D.N.Y. Dec. 5, 2011) ("Granting Defendants' motion would require reopening discovery on a different set of facts than those in the present pleadings.").

Defendants assert that Plaintiffs are not prejudiced because the counterclaims are "based on Plaintiffs' conduct and transactions that occurred during the Plaintiffs' employment with the employer Chorus they were at all times on notice of the conduct at issue in Defendants' counterclaims." (Def. Mem. Of Law in Supp. Of Mot. To Amend ("Def. Mem.") at 21.) Defendants also argue that Plaintiffs were on notice because "Plaintiff Hong freely discussed and admitted to taking Chorus' proprietary electronic information and transferring it to his personal email." (*Id.*) However, Defendants do not assert that Plaintiff Hong admitted to taking and transferring the electronic information without authorization. To the contrary, Plaintiffs contest Defendants' assertion that Plaintiff Hong had no authorization. Defendants' allegations cannot be presumed to be true for the purposes of assessing prejudice to Plaintiffs.

Defendants further argue that Plaintiffs would not be prejudiced because Plaintiffs have delayed discovery by improperly halting a deposition on October 3, 2013, by failing to produce the documents requested on May 18, 2013 in electronic form, and through Plaintiffs' counsel delaying admitting that she was in possession of Chorus's electronic proprietary information until October 21, 2013 and being unavailable during September 2013 for depositions. Defendants further assert that Plaintiffs were complicit in the delay of discovery because they were unavailable for most of September 2013, (Def. Ghim Decl. Ex. J), and they did not oppose Defendants' request to extend discovery to November 1, 2013. (*Id.* Ex. K.) Defendants cite *Grant v. Citibank* for the proposition that non-movants cannot show that a movant's delay was significant if they participated in causing it. 2010 WL 5187754, at *24-25. Defendants' arguments are without merit. Defendants have not shown that Plaintiffs have unnecessarily

delayed discovery to the point that they cannot claim to be prejudiced by Defendants proposed counterclaims. Additionally, *Grant v. Citibank* is distinguishable because the non-movants participation in the delay was significant in that the non-movants failed to respond to the movant's request for consent to amend his complaint, engaged in settlement in negotiations concerning the new claims, and ultimately ended the settlement negotiations by filing a motion for summary judgment. *Id.*

Finally, Defendants assert that Plaintiffs would not be prejudiced by further discovery because discovery has not been completed, and depositions of five of the seven Plaintiffs are still pending. Defendants are correct that this case is distinct from *Gallagher's NYC Steakhouse Franchising, Inc.* in that Judge McMahon has authorized the undersigned to extend discovery if the instant motion is granted. (Docket No. 18.) However, Plaintiffs would still be prejudiced by the addition of an extra round of discovery on factually unrelated counterclaims.

Defendants have failed to meet the "good cause" requirements of Rule 16(b). The motion to amend is **DENIED.**

### B. The Motion to Amend Should Be Denied Under Rule 15(a)

Even were the Court to find that Defendants had met the good cause standard under Rule 16(b), the motion to amend would fail under Rule 15(a). Although leave to amend the pleadings should be "freely given" under Rule 15(a), Fed. R. Civ. P. 15(a), "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). Mere delay, absent a showing of bad faith or undue prejudice by the nonmovant, is not sufficient to deny the right to amend a pleading.

*Fluor*, 654 F.2d at 856. Where discovery has been closed, subsequent amendment of the pleadings may be found to prejudice the opposing party. *Berman v. Parco*, 986 F. Supp. 195 (S.D.N.Y. 1996).

In determining what constitutes prejudice, the court considers whether the assertion of the new claim would (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993); *Duncan v. College of New Rochelle*, 174 F.R.D. 48, 49 (S.D.N.Y. 1997). Additionally, leave to amend may be denied where the moving party knows or should have known the facts upon which the amendment is based, but did not originally plead them. *Priestly v. American Airlines, Inc.*, 1991 WL 64459 (S.D.N.Y. 1991).

Where there is undue delay in filing a motion under Rule 15(a), the movant must provide a satisfactory answer for the delay. *Lightfoot v. Union Carbide Corp.*, 1997 WL 752357, *2 (S.D.N.Y. Dec. 2, 1997) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d. 60, 72 (2d Cir. 1990)). As discussed in the preceding section, Defendants acted with undue delay in pursuing the motion to amend. However, even if the Court were to find that Defendants did not act with undue delay, Defendants' proposed conversion, misappropriation of trade secrets, and unjust enrichment counterclaims and Defendants' proposed CFAA counterclaim against Plaintiffs Hyo Jung, JeongMin Song, HaeYong Lee, Dal Young Cho, Kyungmo Yan, and SangYoon Shin are futile, and therefore the motion to amend should be **DENIED** with respect to those claims. Defendants' CFAA counterclaim against Plaintiff Hong is not futile, and therefore Defendants' motion would be viable with respect to that counterclaim.

**1. Defendants' proposed counterclaim under the CFAA is futile against all the named Plaintiffs except Hong.**

Under the CFAA, "Whoever . . . intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains . . . information from any protected computer . . . shall be punished as provided in subsection (c) of this section." 18 U.S.C. §§ 1030(a)(2), (a)(7). Defendants assert that Hong accessed Defendant Chorus Music Studio's business computer without authorization. The CFAA permits a civil action where there has been damage or loss and "conduct involv[ing] 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g).

Defendants assert that Hong's actions "caused damage or loss in excess of $5,000 in one year to one or more persons." 18 U.S.C. §§ 1030(c)(4)(A)(i)(I)-(V). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Plaintiffs assert that Defendants have only alleged that Hong misused the information in Chorus's business computer by transferring it to his own email account, and have not alleged that he did not have authorization to access the computer. Plaintiffs argue that courts in this district have interpreted the CFAA as prohibiting only unauthorized access to information, and not misuse of information. *See JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 523 (S.D.N.Y. 2013) ("When an employee who has been granted access to an employer's computer misuses that access, either by violating the terms of use or by breaching a duty of loyalty to the employer, the employee does not 'exceed authorized access' or act 'without authorization.'"); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) ("The

CFAA . . . does not prohibit misuse or misappropriation [of computer information].") Although the Second Circuit has not ruled on the issue, Plaintiffs assert that the Second Circuit's decision in *Nexans Wires S.A. v. Sark-USA, Inc.* supports a narrow interpretation of the CFAA. 166 F. App'x 559, 562 (2d Cir. 2006) (denying remedy under CFAA for revenue lost due to misappropriation of information).

Plaintiffs' arguments are unpersuasive. In their proposed First Amended Answer, Defendants assert that "Plaintiff Hong intentionally stole electronic proprietary information when he transferred all electronic files from Chorus' business computer to his personal e-mail without authorization." (Def. Decl. Ex. A ¶ 103.) Defendants also assert that Plaintiff Hong was "not needed or asked, at any relevant time to . . . access the business computer." (*Id.* at ¶ 96.) Defendants have alleged misuse or misappropriation of electronic information but not unauthorized access. The Second Circuit has not ruled on what elements constitute violations of the CFAA, and not all courts in this district have adopted Plaintiff's narrower interpretation of the CFAA. In *Calyon v. Mizuho Secs. USA, Inc.*, for example, the court reasoned that "the plain language of the statute seems to contemplate that . . . 'without access' and 'exceeds authorized access' would include an employee who is accessing documents on a computer system which that employee had to know was in contravention of the wishes and interests of his employer" and found that employees who transferred information from their employer's computer to their personal email accounts before starting work at another company violated the CFAA. No. 07-CV-2241 (RO), 2007 WL 2618658, at *1 (S.D.N.Y. July 24, 2007). Because Defendants' proposed counterclaims need only be plausible to be considered not futile, *N.H. Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009), the Court finds that Defendants' proposed claims would be allowable against Hong.

Plaintiffs also argue that Defendants have not plausibly alleged that Hong's actions "caused damage or loss in excess of $5,000 in one year to one or more persons." 18 U.S.C. §§ 1030(c)(4)(A)(i)(I)-(V). In their proposed First Amended Answer, Defendants assert that "[a] damage assessment is still ongoing and the scope of the damage has still not been determined to date. However, Defendants have spent at least $5,000 to respond to the theft and assess the damage within the meaning of the CFAA." (Def. Decl. Ex. A ¶ 81.) Plaintiffs claim that Defendants' allegations regarding damages are "formulaic recitation[s] of the elements" of a claim and insufficient to meet the plausibility standard under *Ashcroft v. Iqbal*. 556 U.S. 662, 678 (2009). However, for the purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6), the issue is "not whether a [party] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002). Defendants' proposed counterclaims allege sufficient facts to support a claim under the CFAA.

Plaintiffs further assert that it is not plausible that Defendants could have incurred a loss of $5,000 or more. To support this proposition, Plaintiffs cite a single case where damages based on cost of assessment was less than $5,000. *See, e.g., Int'l Chauffeured Serv., Inc. v. Fast Operating Corp.*, 11-CV-2662 (NRB), 2012 WL 1279825, at *4 (S.D.N.Y. Apr. 16, 2012). Plaintiffs have not shown that Defendants' claim regarding damages is implausible. Accordingly, Defendants' CFAA claim is not clearly futile against Hong.

Defendants CFAA claim against the other named Plaintiffs, however, is futile. Defendants assert that the other named Plaintiffs conspired with Hong to use the proprietary information Hong took from Defendants' business computer to promote their new business venture. (Def. Decl. Ex. A ¶ 85.) To support their conspiracy allegation, Defendants make a

number of conclusory allegations, including: 1) "Plaintiff Hong conspired with other named Plaintiffs in the main action to take Chorus' proprietary information for use in a lawsuit against Defendants while they were still employed at Chorus;" (*Id.* ¶ 85); 2) "Plaintiffs aided and abetted Plaintiff Hong in the theft of Chorus' electronic proprietary information . . . ." (*Id.* ¶ 104); 3) "Plaintiffs sold the subject customer lists to third parties and unjustly enriched themselves" (*Id.* ¶ 105); and 4) "Plaintiffs contacted or solicited customers on the stolen customer list to promote their business Club 88 NY and other business ventures or agreements they had." (*Id.* ¶ 111.) These conclusory allegations cannot be considered in determining whether Defendants' proposed counterclaims state a claim for relief. *Iqbal*, 556 U.S. at 678.

Defendants also rely on the fact that the other named Plaintiffs quit Chorus Karaoke on the same day, (Def. Decl. Ex. A ¶ 88), that Hong discussed quitting his employment at Chorus Karaoke with the other named Plaintiffs a week before he quit, (Def. Mem. at 6),[2] that all of the named Plaintiffs' names appear on the advertisement for their alleged new business venture, Club 88 NY (Def. Decl. Ex. G), and that Plaintiff HaeYoung Lee organized this business venture. (Def. Decl. Ex. F at 39:14-19). Plaintiffs dispute that the named Plaintiffs all worked at Club 88 NY, that their names appear on its advertisements, and dispute that Plaintiff Jung testified that Plaintiff Haeyong Lee organized the business venture. However, even assuming all of Defendants' allegations are true, they do not support a conclusion that the other named Plaintiffs conspired with Hong. Defendants do not allege that the other named Plaintiffs had any connection to the alleged unauthorized transfer of Defendants' proprietary information. Defendants merely allege parallel conduct by the named Plaintiffs, which is not sufficient to

[2] Defendants cite the transcript of Hong's deposition for this proposition, but the Court was unable to find support in the transcript. However, even assuming it to be true, Defendants' counterclaims are futile against the other named Plaintiffs.

establish conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Accordingly, Defendants' allegations do not state a claim against the other named Plaintiffs under the CFAA, and Defendants' counterclaim against them would be futile.

**2. Defendants' proposed conversion counterclaim is futile**

Defendants proposed conversion counterclaim is futile. To state a claim for conversion under New York law, a plaintiff must show that "'someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession.'" *SBIW, Inc. v. Gen. Elec. Co.*, No. 10-CV-7812 (PGG), 2013 WL 5338525 (S.D.N.Y. Sept. 24, 2013), *appeal withdrawn* (Feb. 19, 2014) (quoting *Colavito v. New York Organ Donor Network*, 8 N.Y.3d 43, 49-50 (2006)). "An essential element of conversion is 'unauthorized dominion' to the exclusion of the rights of the plaintiff." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011). Defendants have failed to state a claim for conversion because Defendants do not allege that at any point in time they did not have access to the information at issue. *See id.* at 536 (finding plaintiffs failed to state a claim for conversion with respect to a client list when defendant "possessed only a copy of the client list and did not, in any way, limit or otherwise deprive [plaintiffs] of possession or use of that list"). Defendants allege that Hong emailed the files at issue to himself, (Def. Decl. Ex. A ¶ 73), but do not assert that he deleted them from Chorus's business computer. Defendants cite *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292-93 (2007), for the proposition that "conversion allows for the full recovery of the value of the intangible property misappropriated even where the property is returned." (Def. Reply In Supp. Of Mot. To Amend ("Def. Reply") at 9.) Defendants' reliance on *Thyroff* is misplaced. The plaintiff in *Thyroff*, unlike Defendants, was deprived of access to his electronic customer

information and personal records. *Thyroff*, 8 N.Y.3d at 285. As the court held in *Geo Grp., Inc. v. Cmty., First Servs., Inc.*, *Thyroff* did "not alter the traditional rule requiring 'the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor,'" but rather "simply eliminated the law's arbitrary distinction between the theft of information stored on a computer and the theft of information printed on paper." No. 11-CV-1711 (CBA), 2012 WL 1077846, at *9 (E.D.N.Y. Mar. 30, 2012). Accordingly, Defendants' proposed conversion counterclaim is futile.

### 3. Defendants' proposed misappropriation of trade secrets counterclaim is futile.

Defendants' proposed misappropriation of trade secrets counterclaim is futile. To state a claim for misappropriation of trade secrets, Defendants must allege that 1) Plaintiffs possessed a trade secret, and (2) Plaintiffs used the trade secret "in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (internal quotation marks omitted). Defendants allege that: 1) "Plaintiffs used the Chorus proprietary information that they conspired to steal from Defendants to promote their new financial venture at Club 88 NY . . . ." (Def. Decl. Ex. A ¶ 90); 2) "Plaintiffs sold the subject customer list to third parties and unjustly enriched themselves" (*Id.* ¶ 105); 3) "Plaintiffs in this action aided and abetted Plaintiff Hong in the theft of the Defendants' e-files and knowingly misappropriated and used or misused its exclusive proprietary information including trade secrets, financial information, customer lists, customer financial information and other employees' personal and financial information for Plaintiffs' legal and pecuniary benefit" (*Id.* ¶ 110); and 4) "Plaintiffs contacted or solicited customers on the stolen customer list to promote their business Club 88 NY and other business ventures or agreements they had" (*Id.* ¶ 111). Despite Defendants' bold assertions, Defendants put forward

no information or evidence to suggest that any of the allegedly stolen information falls into the category of "trade secrets." Defendants' allegations regarding Plaintiffs' use of trade secrets are thus conclusory. *Iqbal*, 556 U.S. at 678. Defendants do not assert any details regarding in what ways Plaintiffs allegedly misused the customer list, nor do they identify any customers who were supposedly contacted or solicited, nor any other business ventures or agreements Plaintiffs had. Accordingly, Defendants' proposed misappropriation of trade secrets claim is futile.

**4. Defendants' unjust enrichment claim is futile.**

The elements of an unjust enrichment claim are: "1) defendant was enriched, 2) at plaintiff's expense, and 3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Defendants allege that: 1) "Plaintiffs unjustly enriched themselves with any profits made from the stolen proprietary information taken from Chorus' business computer" (Def. Decl. Ex. A ¶ 117); and 2) "Even if the proprietary information is returned to the Defendants, it does not make Defendants financially whole and it is against equity and good conscience to allow Plaintiffs to retrain the benefits derived from their wrongful conduct." Defendants do not allege any facts to support the counterclaim, other than conclusory allegations that merely restate the elements of unjust enrichment. *Iqbal*, 556 U.S. at 678. Therefore, Defendants' counterclaim for unjust enrichment is futile.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to amend is **DENIED** pursuant to Rule 16(b) for failure to demonstrate good cause, and, alternatively is **DENIED** pursuant to Rule 15(a) for undue delay. However, even if Defendants demonstrated good cause and did not act with undue delay, Defendants' proposed conversion, misappropriation of trade secrets, and

unjust enrichment counterclaims and Defendants' proposed CFAA counterclaim against Plaintiffs Hyo Jung, JeongMin Song, HaeYong Lee, Dal Young Cho, Kyungmo Yan, and SangYoon Shin would be futile, and therefore the motion to amend should be **DENIED** with respect to those claims under Rule 15(a). Defendants proposed CFAA counterclaim against Plaintiff Hong would not be futile, but does not provide a compelling basis for reconsidering the Rule 16(b) determination.

**DATED: September 11, 2014**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**